An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA26-250

Filed 5 August 2026

Yadkin County, Nos. 20JT000035-980, 20JT000036-980

IN THE MATTER OF:

P.C.D. and A.M.B.

Appeal by respondent-mother from order entered 25 November 2025 by Chief District Court Judge Robert L. Crumpton in Forsyth County District Court. Heard in the Court of Appeals 12 July 2026.

> *Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender Benjamin J. Kull for respondent-appellant mother.*
>
> *James N. Freeman, Jr., for petitioner-appellee Yadkin County Department of Social Services.*
>
> *Brittany McKinney for Guardian ad Litem.*

PER CURIAM.

Respondent-Mother ("Mother") appeals from the termination of parental rights ("TPR") order regarding her two children entered on 25 November 2025. On appeal, Mother makes no argument concerning the order itself. Rather, she argues the trial court erred by not granting a continuance of the hearing. In the alternative, she

argues she received ineffective assistance of counsel at the hearing. For the reasoning below, we affirm.

## I. Background

In August 2020, Mother's children (hereinafter referred to by pseudonyms "Peter" and "Alice") were placed in the non-secure custody of the Yadkin County Department of Social Services ("YCDSS"). The next month, in September 2020, the children were adjudicated as neglected.

Over the course of the next five years, twelve permanency planning hearings were held. In June 2024, the trial court ceased Mother's visitations with her children. She has not filed any motions seeking to reinstate those visitations.

On 31 October 2025, 1,903 days after the children were placed in the custody of YCDSS, the trial court held the TPR hearing. Evidence at the hearing tended to show as follows: Mother had not adequately addressed the concerns which caused the children to come into YCDSS custody, including substance abuse, mental health, parenting concerns, and safe and appropriate housing. Also, she had not made her required child support payment of $136.00 per month since January 2024. At the time of the hearing, she was over $6,700 in arrears. Peter has been residing with foster parents and has bonded with that family. Alice, who is close to adulthood, lives in a group home and testified in chambers with all counsel present that her desire was for Mother's rights to be terminated. Mother did not appear, but her counsel was present at the hearing. The next month, the trial court entered its order terminating Mother's

rights.

## II. Analysis

Mother makes two arguments appeal, which we address in turn.

### A. Motion to Continue

Mother first argues the trial court reversibly erred by failing to grant a brief continuance of the October 2025 TPR hearing, given Mother was absent and her attorney admitted inability to have prepared for the hearing.

The TPR was filed in July 2024, fifteen (15) months prior to the hearing. At the hearing, Mother's counsel informed the trial court as follows: Counsel was appointed to represent Mother in July 2025, three months prior to the hearing. Counsel had attempted to reach out to Mother prior to the hearing on a number of occasions. Mother finally contacted counsel the afternoon before the scheduled hearing to let counsel know she wanted to contest the TPR but that she was in South Carolina and would not be at the hearing.

In support of the motion to continue, Mother's counsel argued:

> [I]t is {Mother's] constitutional due process right to be here to defend herself. I have, I didn't know her position until yesterday, so we have not had a chance at all to trial prep or, you know, one of the prongs in regarding her case plan progress, abandonment, neglect, child support payment. So I would like to have subpoenaed the child's support order or brought that file to court or maybe subpoenaed some, some things to be able to see her progress on her case plan.

In sum, Mother's counsel based her motion to continue on constitutional grounds.

- 3 -

The party seeking a continuance has to show that a trial court's denial of the motion was erroneous, whether or not the motion was made based on constitutional grounds. *See, e.g., In re A.L.S.*, 374 N.C. 515, 517 (2020) (explaining that the burden is on the party seeking the continuance to show "that the denial was erroneous"). Normally, in determining whether a trial court erred in denying a continuance, we review for abuse of discretion. However, where the motion was made on constitutional grounds, we review whether the trial court erred de novo. *In re C.A.B.*, 381 N.C. 105, 112 (2022).

If we were to determine there was error by the trial court, we must then determine whether the movant was prejudiced by the denial. Our Supreme Court has suggested that, even where the motion was made on constitutional grounds, it is *the movant* who bears the burden to show prejudice. For instance, our Supreme Court stated that "[r]egardless of whether the motion raises a constitutional issue or not, a denial of a motion to continue is only grounds for a new trial when *[the movant] shows both that the denial was erroneous, and that [s]he suffered prejudice as a result of the error.*" *In re A.L.S.*, 374 N.C. 515, 517 (2020) (emphasis added). *See also In re. M.J.R.B.*, 377 N.C. 453, 457 (2021) (quoting *A.L.S.*); *In re B.B.*, 381 N.C. 343, 350 (2022) (quoting *A.L.S.*); *In re L.A.J.*, 381 N.C. 147, 149 (2022).

However, our Supreme Court has also emphatically stated that where a constitutional error is shown when a motion to continue is denied, it is the non-movant's burden to show that the error was harmless beyond a reasonable doubt. *In*

*re C.A.B.*, 381 N.C. 105, 120 (2022) (holding that when a constitutional error is shown, the order "must be overturned unless the error was harmless beyond a reasonable doubt, and DSS bears the burden of proving that the error was harmless" (internal quotations omitted)). In *C.A.B.*, our Supreme Court vacated a termination order because DSS had failed to show that the trial court's denial of the father's motion to continue was harmless beyond a reasonable doubt. *Id.* at 122.

We now turn to the present case. We first address whether Mother has met her burden of showing error by the trial court in denying her motion to continue. Again, she bears that burden, notwithstanding she made her motion on constitutional grounds.

Our Supreme Court has instructed that "continuances are not favored [and that] motions to continue ought not to be granted unless the reasons therefor are fully established." *In re D.J.*, 378 N.C. 565, 570 (2021).

As noted by our Supreme Court in *C.A.B.*, under our Juvenile Code a trial court may not continue a TPR hearing beyond 90 days after the petition is filed unless there is a showing of "extraordinary circumstances". *C.A.B.*, 381 N.C. at 114 (citing N.C.G.S. § 7B-1109(d). We note that in *C.A.B.*, that when determining whether a trial court committed error in denying a motion to continue made on constitutional grounds, our Supreme Court analyzed whether the movant had made a showing that "extraordinary circumstances" existed. *Id.* Based on our Supreme Court's analysis in *C.A.B.*, we conclude a parent's due process rights are not violated

by our Code which places on a parent the burden of showing "extraordinary circumstances" to justify a continuance beyond 90 days past the filing of the petition as required by statute. Here, we conclude Mother's counsel failed to demonstrate extraordinary circumstances existed warranting a continuance at the trial court. While holding a hearing in a manner which violates a Mother's right to due process could be considered an "extraordinary circumstance", based on the record before us, we conclude Mother's due process rights were not violated.

Specifically, the circumstances giving rise to the motion were caused by Mother's own dilatory actions. There is nothing in the record showing that any inadequate preparation was due to anything other than Mother's failure to respond to attempts by her counsel to participate in the preparation for the hearing. The record, otherwise, shows that Mother had ample time to prepare and that her counsel's failure to have done what an attorney would have liked to have done to be prepared was due to Mother's failure to communicate with counsel until the day before the hearing. Though counsel had been Mother's counsel for three months, Mother did not let her counsel know her desire to challenge the TPR until late in the afternoon the day prior to the hearing.

We have held in a TPR case that a trial court does not err in denying a continuance where a parent's attorney is not prepared due to the parent's failure to cooperate with her attorney in the preparation. *In re Bishop*, 92 N.C. App. 662, 666 (1989). Based on *Bishop* and similar cases, we conclude the trial court did not violate

Mother's due process rights when it denied her counsel's motion for a continuance.

Even assuming the trial court erred in denying Mother's continuance motion, we conclude the denial was not prejudicial. In so holding, we conclude the burden does *not* rest on Mother to show prejudice, as might be suggested by some Supreme Court decisions cited above. Rather, following *C.A.B.*, we conclude the burden is on the nonmovant to show the denial was harmless beyond a reasonable doubt.

Applying this standard, we conclude that based on the record before us, YCDSS has met its burden of showing any error by the trial court was harmless beyond a reasonable doubt. In so holding, we note Mother has not contested any of the findings or conclusions in the TPR order and that the evidence was otherwise overwhelming in support of the findings.

### B. Ineffective Assistance of Counsel

In her second argument, Mother contends she received ineffective assistance of counsel. Mother bears the burden of showing (1) defective performance by her counsel and (2) Mother was prejudiced by counsel's supposed deficiencies. *In re L.C.*, 181 N.C. App. 278, 283 (2007). On the second prong, prejudice is shown only if it is shown that a "reasonable probability" a different result would have occurred, but for the counsel's deficient performance. *State v. Braswell*, 312 N.C. 553, 563 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). We can determine from the record that Mother has failed to meet her burden, as explained below.

First, we conclude that the representation by Mother's counsel did not fall below what is expected of a licensed attorney. Any ill-preparation by counsel was due totally to Mother's failure to respond to her counsel's repeated attempts to contact her and Mother's failure to communicate her desire to challenge the TPR until the afternoon before the hearing. Counsel otherwise actively participated in the hearing, as evidenced by her motion to continue being made on constitutional grounds and her multiple objections to the evidence being offered by YCDSS.

Second, even if her counsel's representation fell below the standards expected of an attorney, Mother has failed to show she was prejudiced in light of the overwhelming evidence supporting the grounds to terminate her parental rights, evidence which includes that Mother had not sought visitation with the children or made the mandatory child support payments for them for well over a year prior to the hearing. We, therefore, conclude Mother has failed to meet her burden of showing she is entitled to relief based on ineffective assistance of counsel.

Accordingly, we affirm the trial court's order terminating Mother's parental rights to the two children.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges STADING and FREEMAN.